LEWIS, J.
' Appellant, Ray Mon Wright, appeals his convictions for aggravated assault and burglary of a dwelling in case number 1D14-3197, arguing that the trial court erred in denying his motion for judgment of acquittal on the burglary charge and in failing to revise the transferred,intent jury instruc *1044 tion that was requested by the State. We reject Appellant’s arguments, affirm Appellant’s convictions without further discussion, and write only to address the State’s argument in case number 1D14-3003, which we have treated as a cross-appeal to Appellant’s appeal, that the trial court erred in not sentencing Appellant as a prison releasee reoffender (“PRR”). Finding merit in the State’s argument, we reverse Appellant’s sentences and remand for resentencing.
Appellant committed the offenses at issue on November 6, 2013. The State sought to have Appellant characterized as a PRR based on his June 13, 2013, release following his sentence for the offense of accessory after the fact. For that offense, Appellant had been sentenced to 454 days’ imprisonment with credit for 454 days served in county jail. Pursuant to the judgment in that case, which was entered on June 12, 2013, Appellant was “committed to the custody of the Department of Corrections.” The Department of Corrections’ Inmate Release Information Detail explained that Appellant was released on June 13, 2013, and the Release Facility was listed as the “CENTRAL OFFICE.” The trial court declined to sentence Appellant as a PRR in this case, finding that because he was released from county jail, he did not qualify. Even though the trial court “believe[d] the legislature may have intended [section 775.082] to apply to terms longer than 365 days in the Duval County Jail,” it concluded that because the county jail was not operated by the Department of Corrections, Appellant was not a PRR. This appeal and cross-appeal followed.
A PRR is defined as “[a]ny defendant who commits, or attempts to commit” certain enumerated offenses:
within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor or within 3 years after being released from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 year in this state.
§ 775.082(9)(a)1., Fla. Stat. (2013). This issue involves a question of statutory interpretation, which is reviewed de novo. Reeves v. State, 957 So.2d 625, 629 (Fla.2007). The polestar of statutory construction is legislative intent. W. Fla. Reg’l Med. Ctr., Inc. v. See, 79 So.3d 1, 8 (Fla.2012). To discern legislative intent, a court must look first to the plain and obvious meaning of the statute’s text, which may be discerned from a dictionary. Id. at 9. If the language of the statute is clear and unambiguous and conveys a clear and definite meaning, a court must apply the unequivocal meaning and not resort to the rules of statutory construction. Id. If, however, an ambiguity exists, a court should look to the rules of statutory construction to help interpret legislative intent, which includes the examination of a statute’s legislative history and the purpose behind its enactment. Id.
In addressing this issue, we find persuasive the Fifth District’s reasoning in Louzon v. State, 78 So.3d 678, 679 (Fla. 5th DCA 2012). There, the Fifth District reversed the appellant’s conviction for robbery with a weapon because of several improper comments made by the prosecutor during closing arguments. Id. at 679. In its opinion, the Fifth District set forth in part:
Although unnecessary to our disposition of this appeal, we will briefly address the sentencing issue raised by Louzon in the event that Louzon is ulti- *1045 raately convicted of a robbery offense. Louzon claims he was ineligible to be sentenced as a prison releasee reoffen-der (PRR) under section 775.082(9)(a) because the record failed to reflect that he had ever been physically in the custody of the Department of Corrections. Section 775.082(9)(a) defines a “prison releasee reoffender” as a person who commits an enumerated offense within three years after being “released from .a state correctional facility operated by the Department of Corrections.... ” In the instant case, the record reflects that although Louzon was sentenced to prison in May 2009 on a prior felony offense, he was not physically transferred to the Department of Corrections. Louzon had 609 days credit for jail time served and, thus, his sentence was found to have been fully served. Louzon argues that in order to qualify for PRR sentencing under section 775.082(9)(a), he must have been physically present at, and then released from, a Department of Corrections facility. We reject this argument. When Louzon was sentenced to imprisonment in May 2009, he was placed in the legal custody of the Department of Corrections. Because of the jail time credit, he was released by the Department of Corrections from its legal custody....
To accept Louzon’s argument would place form over substance and would be inconsistent with the Legislature’s clear intent to provide for a greater sentence for individuals who commit a qualifying offense within three years of completion of a previously imposed prison sentence. To accept Louzon’s argument would also mean that in order for the State to ensure that a defendant in Louzon’s situation was eligible for subsequent PRR sentencing, it would have to physically transfer an individual from jail to a Department of Corrections facility — where the individual would then be entitled to an immediate release. Courts should not construe a statute so as to achieve an absurd result.
Id. at 680-81.
Subsequently, in Taylor v. State, 114 So.3d 366, 355 (Fla. 4th DCA 2013), the Fourth District affirmed the appellant’s PRR sentence based upon the reasoning in Louzon, which the Fourth District adopted. The Fourth District set forth in part:
Here, appellant qualified as a PRR, because he committed -the present offense within three years after his release from a federal correctional facility. Appellant was still in federal custody, even though housed in a Palm Beach County jail in order to perform substantial assistance. His release from federal custody while housed at the county jail still constitutes constructive release from a federal correctional facility for purposes of section 775.082(9)(a)(l), Florida Statutes.
Id. at 356.
In this case, it is undisputed that Appellant’s most recent release date for a previous offense was June 13, 2013, within three years of the commission of the offenses at issue. However, rather than physically being released from a state correctional facility operated by the Department of Corrections or a private vendor, Appellant was physically released from the county jail as a result of his sentence of time served. Following the reasoning in both Louzon and Taylor, we conclude, based upon the facts presented, that Appellant’s release from custody constituted a constructive release from the Department of Corrections and a state correctional facility for purposes of section 775.082(9)(a)l. Contrary to the dissent’s reasoning, we decline to hold that Appellant, who committed a PRR-qualifying offense, who was *1046 committed to the Department’s custody, and whose release facility was listed as the central office, could not be considered a PRR simply by virtue of the fact that he was sentenced to time served and physically walked out of a county jail. We see nothing in the PRR statute to indicate that the Legislature intended for a defendant in this situation to avoid PRR status in the future.
In support of his argument, Appellant cites Cassista v. State, 57 So.3d 265 (Fla. 5th DCA 2011). There, the appellant appealed the summary denial of his postcon-viction relief motion, alleging that the trial court improperly sentenced him as a PRR because he had not been released from a state correctional facility within three years of the date that he committed the offenses at issue. Id. at 266. The Fifth District explained that the appellant was released from the Department of Corrections and began his-probation but absconded. Id. Two years later, in October 2005, he was sentenced for violating his probation to thirty-eight months in the Department of Corrections with forty-two months’ jail credit. Id. The appellant claimed that he was transpoi-ted from the St. Lucie County Jail to the Department of Corrections but was turned away because no commitment order was sent with him. Id. In November 2005, he was released from the county jail, and twenty-eight days later committed the offenses at issue. Id. The appellant argued that because he was effectively sentenced to time served in October 2005.and the Department of Corrections refused to accept him, he was last released from a state correctional facility in August 2003, more than three -years prior to the offenses at issue'. Id. at 267. After noting that the appellant contended that the word “release” in the PRR statute did not include being released from a temporary confinement that happened to be in a state prison, the Fifth District set forth, “[Offenders are sometimes only temporarily detained. Unless those detentions ‘ripen’ into reimprisonment, they are excluded from consideration for PRR purposes.” Id. at 267. Given the incomplete record before it, the Fifth District could not determine when the appellant was released from á state correctional facility and, therefore, reversed the order denying the appellant’s postconviction relief motion and remanded for further consideration. Id. at 267-68.
As the State argues, Appellant’s reliance upon Cassista is misplaced. In this case, Appellant was not temporarily detained in the county jail.- Instead, he was committed to the Department of Corrections and sentenced to time served. As the Fifth District in Cassista explained:
On occasion, an offender’s sentence expiration date might be relevant if for example, the offender, while committed to a state correctional facility, is temporarily transported to a hospital, for treatment, or to a county jail to face urn-elated charges. If that offender’s state prison sentence expires while he or she is temporarily residing in a hospital or county jail, we would have no difficulty in concluding that the offender was constructively in a state prison facility when his sentence expired for PRR purposes.
Id. at 267 n. 1. Because Appellant’s state prison sentence for the offense of accessory after the fact expired while he was in county jail by virtue of the fact that he was given credit for time served, the trial court erred in not sentencing him as a PRR in this case.
For these reasons,, we affirm Appellant’s convictions in ease number 1D14-3197, but reverse his sentences in case number 1D14-3003 and remand for resentencing in accordance with our opinion.
*1047 AFFIRMED in part; REVERSED in part; and REMANDED for resentencing.
WINOKUR, J., concurs with opinion.
MAKAR, J., dissents with opinion'.